**IN THE COURT OF APPEALS OF IOWA**

No. 24-2008
Filed February 19, 2025

**IN THE INTEREST OF S.P.,**
**Minor Child,**

**V.P., Mother,**
     Appellant.

_____

     Appeal from the Iowa District Court for Johnson County, Joan M. Black,

Judge.

     A mother appeals the termination of her parental rights. **AFFIRMED.**

     Karina A. Miller of Astraea Legal LLC, Iowa City, for appellant mother.

     Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

     Sue Kirk of Arnott & Kirk, PLLC, Iowa City, attorney and guardian ad litem

for minor child.

     Considered by Ahlers, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

A mother appeals the termination of her parental rights to her child, born in 2024, under Iowa Code section 232.116(1)(h) (2024).[1] She claims the juvenile court erred in terminating her parental rights because insufficient evidence supported the ground for termination, termination was not in the child's best interests, the permissive parent-child bond exception in section 232.116(3)(c) applied, and she should have been granted more time for reunification. We affirm upon our de novo review of the record.

**I.      Background Facts and Proceedings**

The day after the child was born, the Iowa Department of Health and Human Services received a report that the infant had methamphetamine and marijuana in her system. The mother admitted that she used both drugs throughout her pregnancy—until just three days before the child was born.[2] The department put a safety plan into place that required the mother and child to live with the maternal grandparents. One week later, in April 2024, the juvenile court removed the child from the mother's custody, and the State filed a child-in-need-of-assistance petition.

The mother stipulated to the child's adjudication and began participating in services. She and the child remained in the maternal grandparents' home, where the mother cared for the child under her family's supervision and did "a great job

---

[1] The juvenile court also terminated the rights of the presumed father and any putative fathers. The presumed father did not participate in the proceedings and has not appealed.

[2] The mother also used methamphetamine while pregnant with her first child, who was born in December 2022. She voluntarily placed that child for adoption.

meeting [the child's] basic needs," according to the department's social work case manager. The mother quickly completed a substance use evaluation, started mental-health and substance-use treatment at a dual diagnosis program, and obtained a full-time job. But her participation in drug testing was inconsistent, as was her communication with the department and other providers.

In July, the mother tested positive for methamphetamine, which she blamed on "accidentally vap[ing] methamphetamine that belonged to a friend of hers." Around the same time, the mother stopped attending substance-use treatment. She restarted treatment in August but had another positive test for methamphetamine that month. Because the mother was not making progress with her sobriety, the department changed its permanency goal to termination of parental rights. The State filed a termination petition in September. The next week, the mother was arrested. She remained in jail through October. Once she was released, the mother moved back in with the maternal grandparents and got a new substance-use evaluation. But she soon tested positive for methamphetamine again. After that positive test, the grandparents told the department they could no longer care for the child, who was then moved to a foster home.

A termination hearing was held in December. The mother did not attend the hearing because she was sick, and through her attorney, declined the juvenile court's offer to participate remotely. At the hearing, the case manager agreed with the mother's attorney that she was "a good mother when she is parenting sober." But she had yet to achieve lasting sobriety. As the guardian ad litem told the juvenile court in closing, the mother "has chosen meth over her child, and I know

she's racked with guilt about that. She can't seem to commit to addressing her addiction, and so I believe that termination is appropriate under the circumstances." The court agreed and terminated the mother's parental rights under Iowa Code section 232.116(1)(h). The mother now appeals.

## II. Analysis

We review terminations of parental rights de novo, using a three-step analysis that asks whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3). The mother challenges each of these steps and asks for more time to work towards reunification. *See In re L.T.*, No. 24-1348, 2024 WL 4966040, at *3 (Iowa Ct. App. Dec. 4, 2024) ("If all three steps support termination, we then consider any other issues the parent raises, such as whether more time should have been granted."); *see also* Iowa Code §§ 232.104(2)(b), 232.117(5).

### A. Waiver and Error Preservation

The State preliminarily argues that the mother waived each of these claims because she did not attend the termination hearing. *Cf. In re J.R.*, No. 24-0942, 2025 WL 52738, at *1 (Iowa Ct. App. Jan. 9, 2025) (en banc) (holding that a parent does not have to "personally participate in a termination hearing to . . . prevent waiver on appeal" when represented by an attorney). The State also argues that the mother did not preserve error on the statutory ground or permissive exception issues. We elect to bypass these waiver and error-preservation concerns and proceed to the merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999)

(bypassing error preservation problem and proceeding to the merits of the issue raised on appeal); *accord In re Q.E.*, No. 14-0783, 2014 WL 3939918, at *4 n.2 (Iowa Ct. App. Aug. 13, 2014).

### B.       Statutory Ground

For her challenge to the sole ground for termination—section 232.116(1)(h)—the mother argues that because she was allowed to live with the child and maternal grandparents, the child was not "practically removed" from her custody until "just days before the termination trial" when the grandparents notified the department they could no longer care for the child. The mother contends there is not clear and convincing evidence that the child "could not be returned to this arrangement at this present time." In making this argument, the mother acknowledges that she needs "treatment and sobriety" and asks this court for a remand "with a grant of additional time to work for reunification." We reject this argument for two reasons.

First, the record is clear that the child was removed from the mother's custody in April 2024, satisfying the third element of section 232.116(1)(h). *See* Iowa Code § 232.116(1)(h)(3) (requiring the State to prove by clear and convincing evidence that the "child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days"). Second, the mother's concession on appeal that she needs more time to parent the child on her own is clear and convincing evidence that the child could not have been returned to her custody at the termination hearing, as required by the fourth element of section 232.116(1)(h). *See In re D.W.*, 791 N.W.2d 703, 707

(Iowa 2010) (interpreting the statutory language "at the present time" in section 232.116(1)(h)(4) to mean "at the time of the termination hearing"); *see also In re J.K.*, No. 24-1065, 2024 WL 4370055, at *2 (Iowa Ct. App. Oct. 2, 2024). The record bolsters that conclusion.

All six of the drug tests that the mother took for the department—out of the twelve that she was asked to take—were positive for methamphetamine. The mother's last positive test was the month before the termination hearing. While the case manager testified that the mother was exploring inpatient treatment, she had not yet been accepted into a program and had only recently started outpatient treatment again after her release from jail. "Because the evidence revealed an ongoing danger of methamphetamine use, we have no serious doubts about the juvenile court's conclusion" that the child could not be returned to the mother's custody at the termination hearing. *In re O.J.*, No. 24-0675, 2024 WL 3688591, at *5 (Iowa Ct. App. Aug. 7, 2024). We accordingly find clear and convincing evidence supported termination under section 232.116(1)(h).

### C. Best Interests

The mother next claims that termination is not in the best interests of the child. On this question, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re P.L.*, 778 N.W.2d 33, 36–39 (Iowa 2010). The mother argues the "best placement and long-term nurturing for the child is to remain in a similar one to the past year"—where the mother would live with the maternal grandparents and parent the child under their supervision. But that

placement was no longer an option at the termination hearing because of the mother's persistent positive tests for methamphetamine. In any event, the "crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). We agree with the juvenile court that because the mother "continues to actively use methamphetamine and has made no real progress towards reunification," termination of her parental rights was in the child's best interests.

### D.     Permissive Exception

The permissive exception in Iowa Code section 232.116(3)(c) allows the juvenile court to avoid termination when the parent proves by clear and convincing evidence that it "would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting the exception is "permissive, not mandatory" (citation omitted)). The department's case manager and the child's guardian ad litem both recognized there was a bond and "a lot of love" between the mother and child. Yet they recommended terminating the mother's parental rights because, as the case manager testified, the mother "has never been able to show any form of sobriety" aside from when she was incarcerated. We agree with the juvenile court that the child's "need for safety, consistency and permanency outweighs the loss of the bond that does exist." *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) ("[T]he existence of a bond is not enough.").

### E.     Additional Time

The mother asked for a six-month extension of permanency at the termination hearing. The juvenile court "may deny termination and give the parent

an additional six months for reunification only if the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)). On appeal, the mother argues that an extension will allow her "to demonstrate her ability to remain sober," pointing out her efforts since her last relapse in obtaining another substance-use evaluation, attending outpatient treatment, and contacting an inpatient treatment program. But given the mother's past performance, "we are not convinced additional time or services" will alleviate the need for removal at the end of an extension. *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990); *see also In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[A] good prediction of the future conduct of a parent is to look at the past conduct."). We therefore affirm the juvenile court's denial of the mother's request for additional time.

**AFFIRMED.**